UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

    v.

JOSEPH L. CRAPSI,

        Defendant.

24-CR-138-LJV-JJM
DECISION & ORDER

---

On October 16, 2024, the defendant, Joseph L. Crapsi, was indicted on one count of aiming a laser pointer at an aircraft in violation of 18 U.S.C. § 39A. Docket Item 16. Later that day, this Court referred the case to United States Magistrate Judge Jeremiah J. McCarthy for all proceedings under 28 U.S.C. § 636(b)(1)(A) and (B). Docket Item 18.

On March 24, 2025, Crapsi filed, among other motions, a motion to suppress evidence related to his arrest—including physical evidence seized from his bedroom immediately after his arrest—as well as statements that he made following the arrest. Docket Item 33. The government then responded, Docket Item 35, and Crapsi replied, Docket Item 37. After hearing oral argument, *see* Docket Item 39, Judge McCarthy issued a Report and Recommendation ("R&R") finding that this Court should grant in part and deny in part Crapsi's motion to suppress, Docket Item 46. More specifically, Judge McCarthy recommended denying the motion to suppress based on Crapsi's arrest, *id.* at 3, but granting the motion to suppress the laser pointer seized from Crapsi's bedroom, *id.* at 6, as well as the fruit of that poisonous tree: Crapsi's

statements demonstrating how to use the laser pointer, *id.*[1] Finally, Judge McCarthy found that "Crapsi [had] fail[ed] to sufficiently identify the other alleged statements which he seeks to suppress" and that "his request for that relief should be denied." *Id.*

Both parties objected to the R&R. Docket Items 51 and 53. Crapsi objected to Judge McCarthy's recommendation to deny the motion to suppress statements made and evidence seized in connection with Crapsi's arrest and to deny the motion to suppress additional statements. Docket Item 53. The government objected to Judge McCarthy's recommendation to suppress the laser pointer and Crapsi's demonstration of how to use it. Docket Item 51. After both parties responded to the other side's objections, Docket Items 55 and 56, and replied, Docket Items 57 and 58, this Court heard oral argument and reserved decision. *See* Docket Item 60.

A district court may accept, reject, or modify the findings or recommendations of a magistrate judge. 28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59(b)(3). The court must review de novo those portions of a magistrate judge's recommendation to which a party objects. 28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59(b)(3).

This Court has carefully and thoroughly reviewed the R&R; the objections, responses, and replies; and the materials submitted to Judge McCarthy, including the video footage submitted by the government. Based on that de novo review, this Court adopts the R&R insofar as it recommends finding that Crapsi's arrest was supported by probable cause. This Court also adopts the R&R's recommendation to deny Crapsi's motion to suppress statements other than the laser pointer demonstration but modifies the reasons for that conclusion as explained below. The Court respectfully declines to

---

[1] Page numbers in docket citations refer to ECF pagination.

adopt the R&R's recommendation to suppress the laser pointer, however; denies Crapsi's motion to suppress the laser pointer; and grants in part and denies in part Crapsi's motion to suppress his demonstration of how to use the laser pointer.

## DISCUSSION[2]

### I. CRAPSI'S ARREST

As explained above, Crapsi objects to Judge McCarthy's finding that the officers had probable cause to arrest him. Docket Item 53 at 9-10. This Court agrees with Judge McCarthy.

"Probable cause to arrest requires that the totality of facts and circumstances known to the police permit a person of reasonable caution to conclude that there is a 'fair probability' that the person to be seized has committed or is committing a crime." *United States v. Patterson*, 25 F.4th 123, 136 (2d Cir. 2022) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). Probable cause does not "require[] the more-likely-than-not showing demanded by the preponderance standard." *Id.* at 135 (citing *Gates*, 462 U.S. at 235). Here, as the government observes, "[a]t the time of [Crapsi]'s arrest, the police had learned the following facts":

> 1. The pilot of Delta Flight 2334 reported that someone had pointed a laser towards his aircraft while he was landing;
>
> 2. The pilot reported that the laser had come from the general direction of the defendant's home;
>
> 3. Nearly contemporaneous with the pilot's report, the defendant's neighbor reported seeing a laser shining through the defendant's window on multiple occasions; and

---

[2] The Court assumes the reader's familiarity with the factual background, *see* Docket Item 46 at 1-3, and will refer to facts only as necessary to explain its decision.

   4. The neighbor reported seeing the laser shining towards the sky.

Docket Item 55 at 7. That is sufficient to meet the relatively low standard for probable cause.[3]

   The Court also agrees with Judge McCarthy and the government that "exigent circumstances required that the arrest be made before a warrant could be obtained." *See United States v. Cattouse*, 846 F.2d 144, 146 (2d Cir. 1988) (citation and internal quotation marks omitted). Pointing a laser at an aircraft is dangerous, and waiting for an arrest warrant could have "risked the lives of hundreds of airline passengers." *See* Docket Item 55 at 7.

   For all those reasons, this Court adopts the portion of the R&R recommending that this Court deny Crapsi's motion to suppress any and all evidence connected to his arrest.

## II. THE LASER POINTER

   When the officers arrested Crapsi, they seized a laser pointer from his bedroom. *See* Docket Item 46 at 3. The government says that the laser was properly seized because exigent circumstances permitted the officers to accompany Crapsi to his room and, once there, they saw the laser in plain sight. *See* Docket Item 51 at 7-15. Judge McCarthy disagreed and recommended that the laser be suppressed because there

---

[3] The officers also observed "a green glow" coming from Crapsi's bedroom. *See* Docket Item 51 at 4. At oral argument, the parties disagreed as to whether the officers could reasonably have thought this was from a laser pointer as opposed to what it actually was from—green string lights. The Court need not decide this issue, however, because even without observing the "green glow," the officers had probable cause to arrest Crapsi.

were no "'real time' exigencies . . . at the time of the search." Docket Item 46 at 5. "By then," Judge McCarthy explained, "Crapsi had already left his bedroom, eliminating the chance that he could destroy the laser or point it at an aircraft." *Id.* And Judge McCarthy noted that "[t]he government fails to explain why officers could not have secured the bedroom until they obtained a search warrant, either in person or by telephone." *Id.*

In its objection, the government argues that "it does not matter whether, in hindsight, we know that [Crapsi] would not return to his bedroom after he left; the Fourth Amendment instead requires the Court to view the facts from the officers' perspective." Docket Item 51 at 11. And the government says that "here, the officers could not be sure that [Crapsi] would not return to his bedroom to retrieve something, particularly given that he had already left and returned to his bedroom on one occasion." *Id*. "In addition," the government says, "the officers did not know when [Crapsi] would be released from custody, thereby giving him an opportunity to return home and destroy the laser; indeed, after being booked and given an appearance ticket, [Crapsi] was released at approximately 2:44 a.m.—less than two hours after his arrest." *Id.*

After careful consideration, this Court agrees with the government. First, the Court finds that the exigency exception allowed the officers to accompany Crapsi to his bedroom to get his clothes to ensure that he did not take, hide, or destroy evidence. *See United States v. Delva*, 858 F.3d 135, 153-54 (2d Cir. 2017) (explaining that "[a]mong the most common exigencies found to validate entry into a home with probable cause but without a warrant [is] . . . the need to prevent the destruction of evidence" and that "[o]ther exigencies . . . may include the need to reenter or remain in

5

the premises for the purpose of having the arrestee appropriately clothed"); *cf. United States v. MacDonald*, 916 F.2d 766, 768 (2d Cir. 1990) (upholding warrantless entry into residence where "any delay in arresting the suspects would be likely to result in the destruction of evidence, particularly the cocaine, which could be disposed of easily, by being flushed down the bathroom toilet").  So the officers had legitimate reason to be in Crapsi's bedroom with him.  And "[w]here the initial intrusion that brings the police within plain view of [the seized] article is supported . . . by one of the recognized exceptions to the warrant requirement, the seizure is . . . legitimate." *Horton v. California*, 496 U.S. 128, 135 (1990).

Although it is true, as Judge McCarthy found, that the officers did not seize the laser pointer until after Crapsi had left the room, that does not change the fact that their "initial intrusion" into the room was authorized by exigent circumstances.  And the officers did not search the room but saw the laser pointer almost immediately after Crapsi left.  What is more, as the government observes, the situation at that time was still relatively fluid in that the officers did not know when Crapsi would return.  For all those reasons, the Court finds that because the circumstances met the exigency exception, the officers were not required to obtain a warrant to go to Crapsi's room.

So the question that remains is this: was the laser pointer in plain sight?  The Court has carefully reviewed the relevant body camera footage and, based on that de novo review, finds that the government has established by a preponderance of the evidence that the laser pointer was in plain view.[4]  *See United States v. Alisigwe*, 2023

---

[4] The government argues that to the extent Judge McCarthy's finding that "the officers in the room found the laser lying on his bed" was a finding that the laser pointer was in plain view—that is, a finding of fact—that finding should be reviewed for clear

6

WL 8275923, at *4 (S.D.N.Y. Nov. 30, 2023) (explaining that government must prove exception to warrant requirement by preponderance of the evidence).

The camera footage shows Crapsi leaving the bedroom and one of the officers saying "looks like he's all set here." Government's Exhibit A, Video_2024-03-01_0055_X60AC645D, at 7:23. The officer then says: "is it on his bed . . . just look to see if it's right here in plain sight." *Id.* at 7:25. The officers walk over to the bed and shine their flashlights on it. Almost immediately, an officer says: "Yeah, this is it right here. That's the one. You can tell how it's got that danger warning on it because it's a high intensity laser." *Id.* at 7:34. Although the bed is not in the frame of the video, it still is clear from the video that the officers do not move or manipulate anything on the bed.[5] And that is especially so given the preponderance of the evidence standard.

For all those reasons, this Court respectfully disagrees with Judge McCarthy and denies Crapsi's motion to suppress the laser pointer.

### III.   CRAPSI'S STATEMENTS

#### A.   Demonstration of How to Use the Laser Pointer

Following Crapsi's arrest on March 1, 2024, he was taken to a booking room at the Niagara Frontier Transportation Authority ("NFTA") police station and seated on a

---

error. *See* Docket Item 55 at 1 (quoting Docket Item 46 at 3). But as the government itself acknowledges, "Judge McCarthy did not explicitly state that the officers found the laser pointer in plain view." *Id.* Therefore, the Court reviews this issue de novo.

[5] Because the Court finds that exigent circumstances allowed the officers to enter Crapsi's room and that the officers found the laser pointer in plain sight, the Court need not determine whether Crapsi's mother gave implied consent to enter. *See* Docket Item 46 at 5-6 (Judge McCarthy's concluding that there was no implied consent).

7

bench as officers entered and exited the room.[6]  *See* Docket Item 51 at 20; Government's Exhibit B.  Because Crapsi is deaf, the officers asked him the routine booking questions by writing back and forth.  *See* Docket Item 51 at 20; Government's Exhibit B at 9:32.  After that, Crapsi remained seated on the bench while several officers stood around a desk and talked a few feet away.  *See* Government's Exhibit B at 11:45.  One of the officers removed the laser pointer from its box and shined it away from Crapsi; another officer then asked for the laser pointer, and the first officer handed it to him.  *See id.*  The officers did not address or question Crapsi, but Crapsi spontaneously interjected, speaking and using his hands to demonstrate how to use the laser pointer.  *See id.* at 12:18.

An officer then asked Crapsi a clarifying question about what he was demonstrating, and Crapsi answered.  *See id.* at 12:25. The officer handed the laser pointer to Crapsi, who demonstrated how to use or adjust it.  *See id.* at 12:32.  The officers took the laser pointer back from the Crapsi, put it back together, and returned it to its box.  *See id.* at 13:05.

Judge McCarthy found that the demonstration of the laser should be suppressed as fruit of the poisonous tree.  Docket Item 46 at 6.  Because this Court declines to suppress the laser pointer, however, it must determine whether the demonstration violated Crapsi's rights under the Fifth Amendment.

---

[6] Initially, officers from the Cheektowaga Police Department responded to a report by Crapsi's neighbor that a laser was being shined into the neighbor's house and at the sky.  *See* Docket Item 51 at 3.  The NFTA police got involved when they received the report from the pilot that his plane had been struck by a laser.  *See id.* at 4.

*Miranda* warnings are required not only for formal interrogation but also when the defendant "was subjected to the 'functional equivalent' of questioning." *Rhode Island v. Innis*, 446 U.S. 291, 302 (1980). To determine whether police conduct was functionally equivalent to interrogation, courts "consider [the] conduct in light of the totality of the circumstances" and "assess[] whether the police 'should have known' that their actions were reasonably likely to elicit an incriminating response." *United States v. Stroman*, 420 F. App'x 100, 102 (2d Cir. 2011) (summary order) (some internal quotation marks omitted) (quoting *Acosta v. Artuz*, 575 F.3d 177, 191 (2d Cir. 2009)). In other words, if—prior to being given a *Miranda* warning—the defendant was "subjected by the police to words or actions that the police should have known were reasonably likely to elicit an incriminating response from him," that violates the Fifth Amendment. *Innis*, 446 U.S. at 303.

The government argues that "[t]he officers' conduct, as well as their positioning in a circle away from [Crapsi], demonstrates that they had no reason to believe that their conduct would elicit a response from [Crapsi]." Docket Item 51 at 23. This Court agrees—up to a point. More specifically, the Court agrees that Crapsi's initial spontaneous interjection into the officers' conversation—where he used his hands to instruct the officers about how to use the laser pointer—was not in response to anything the officers did or said that was reasonably likely to elicit an incriminating response. *Cf. Isasi v. Herbert*, 176 F. App'x 143, 145 (2d Cir. 2006) (summary order) (finding no Fifth Amendment violation where the defendant "'blurted' out his statement to the detective" such "that his statement was 'spontaneous' and not 'triggered by police conduct which should reasonably have been anticipated to evoke a declaration from the defendant'"

9

(citation omitted)). But one of the officers then did two things: he asked Crapsi a question, and he handed Crapsi the laser pointer, which is, as Crapsi observes, "the alleged instrumentality of the off[ense]." See Docket Item 33 at 8. Those actions—asking Crapsi a question about how to use the laser pointer and handing it to him—were reasonably likely to elicit an incriminating response, and the officers should have known as much.[7] Cf. United States v. Lovell, 317 F. Supp. 2d 663, 669 (W.D. Va. 2004) (concluding that showing rifle to defendant was "functional equivalent" of interrogation).

This Court therefore grants in part and denies in part Crapsi's motion to suppress his demonstration of the laser pointer. More specifically, the Court denies the motion as to Crapsi's initial interjection but grants the motion for all statements and actions following the officer's asking Crapsi a question and handing him the laser pointer.

### B. Statements to Crapsi's Mother

After Crapsi was given a Miranda warning at the police station, the officers left the room and Crapsi spoke with his mother. As the government observes, statements to third parties that are not part of an interrogation are not covered by Miranda. See Docket Item 51 at 23; see also United States v. Romero, 897 F.2d 47, 52 (1990) ("Miranda does not apply to incriminating statements made to private persons in the absence of police subterfuge or intimidation."). Crapsi does not allege that his conversation with his mother was the result of any subterfuge or intimidation. Thus, the Court denies Crapsi's motion to suppress his statements to his mother.

---

[7] What is more, there is good reason to believe that had Crapsi been given a Miranda warning, he would not have continued to make incriminating statements. After all, once given his Miranda warning, he declined to talk further with the police. See Docket Item 51 at 22.

### C.     Statements to the FBI

Crapsi also was interviewed by the FBI on March 15, 2024.  *See* Docket Item 55 at 5.  The government has agreed not to use these statements in its case in chief and therefore argues that the motion to suppress them is moot.  *Id.* at 5-6.  Crapsi says that the Court still should address the voluntariness of the statements since the government may seek to use them for impeachment.  Docket Item 53 at 6.  The government counters that this question can await another day.  Docket Item 55 at 5.

This Court agrees with the government and denies as moot Crapsi's motion to suppress the March 15 statements.  If the government intends to use those statements as impeachment at trial, the Court will address their voluntariness in motions in limine.

### CONCLUSION

For all the above reasons, this Court adopts the R&R in part.  More specifically, the Court grants Crapsi's motion to suppress as to his demonstration of the laser pointer after the officer asked him a question and handed the pointer to him but otherwise denies Crapsi's motion.

SO ORDERED.

Dated:   September 12, 2025
            Buffalo, New York

      */s/ Lawrence J. Vilardo*
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE