UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA

v.

JOSEPH L. CRAPSI,                                24-CR-138-LJV-JJM
                                                 DECISION & ORDER
                 Defendant.

---

The defendant, Joseph Crapsi, pleaded guilty to violating 18 U.S.C. § 39A by shining a laser pointer at an airplane while it was landing.  *See* Docket Item 70.  As part of the plea agreement, the parties reserved their rights to argue for or against the application of United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") § 2A5.2(a)(2), which provides an elevated base offense level if the "offense involved recklessly endangering the safety of an aircraft."  Docket Item 70 ¶ 6.

The parties dispute the legal standard for recklessness under that section.  More specifically, they disagree about whether the government must demonstrate that Crapsi knew that shining a laser at an airplane endangered the plane's safety*, compare* Docket Item 76, *with* Docket Item 77, and they have asked the Court to rule on that issue prior to any evidentiary hearing, *see* Docket Item 78 ¶¶ 4-5.  For the reasons that follow, the Court agrees with Crapsi and finds that to prove recklessness under U.S.S.G. § 2A5.2(a)(2), the government must establish that Crapsi knew his conduct endangered the airplane's safety.

**DISCUSSION**

Section 2A5.2 provides the following base offense levels for crimes involving interference with a flight crew member, flight attendant, or aircraft:

(a) Base Offense Level (Apply the greatest):

(1)    **30**, if the offense involved intentionally endangering the safety of: (A) an airport or an aircraft; or (B) a mass transportation facility or a mass transportation vehicle;

(2)    **18**, if the offense involved recklessly endangering the safety of: (A) an airport or an aircraft; or (B) a mass transportation facility or a mass transportation vehicle;

(3)    if an assault occurred, the offense level from the most analogous assault guideline, §§2A2.1–2A2.4; or

(4)    **9**.

U.S.S.G. § 2A5.2(a).  For Crapsi, this means a base offense level of 18 if the Court finds that his "offense involved recklessly endangering the safety of . . . an aircraft" or a significantly lower base offense level of 9 if the Court does not make that finding.  *See id.*

Section 2A5.2 does not define "recklessly," nor is that term included in the general Guidelines definitions.  *See* U.S.S.G. § 1B1.1, cmt. n.1 (providing "definitions of terms that are used frequently in the [G]uidelines and are of general applicability").  But as Crapsi observes, *see* Docket Item 76 at 1,[1] another Guidelines section—U.S.S.G. § 2A1.4 (involuntary manslaughter)—defines "[r]eckless" as "a situation in which the defendant was aware of the risk created by his conduct and the risk was of such a nature and degree that to disregard that risk constituted a gross deviation from the

---

[1] Page numbers in docket citations refer to ECF pagination.

standard of care that a reasonable person would exercise in such a situation." *See* U.S.S.G. § 2A1.4, cmt. n.1.  So there is a definition of "reckless" in the Guidelines, albeit in a different section.

At first glance, it might seem reasonable simply to use that definition.  But there is a catch:  The section 2A1.4 application note specifies that the definition is only "[f]or purposes of this [G]uideline."  *Id.*  And an application note for the general definitions provides that "[d]efinitions of terms also may appear in other sections," but "[s]uch definitions are not designed for general applicability; therefore, their applicability to sections other than those expressly referenced must be determined on a case-by-case basis."  *Id.* § 1B1.1, cmt. n.2.  Based on all that, this Court declines to automatically import the recklessness definition from section 2A1.4.

Instead, this Court looks to the general criminal law definition of recklessness. And as it turns out, that definition is almost the same as the one that applies to the involuntary manslaughter Guideline.  More specifically, as the Supreme Court has found, "[a] person acts recklessly, in the most common formulation, when he 'consciously disregard[s] a substantial [and unjustifiable] risk that the conduct will cause harm to another.'"  *Counterman v. Colorado*, 600 U.S. 66, 79 (2023) (alterations in original) (quoting *Voisine v. United States*, 579 U.S. 686, 691 (2016)).  "That standard," the Court noted, "involves insufficient concern with risk, rather than awareness of impending harm."  *Id.* (citing *Borden* v. *United States*, 593 U. S. 420, 425-27 (2021) (plurality opinion)).  "But still," the Court explained, "recklessness is morally culpable conduct, involving a '*deliberate decision to endanger another.*'"  *Id.* (emphasis added) (quoting *Voisine*, 579 U.S. at 694); *see also Mankins v. Spring*, 2025 WL 276293, at *2

(D. Conn. Jan. 23, 2025) (noting that state of mind for criminal recklessness "reflect[s] actual awareness of a substantial risk that serious harm . . . would result from the [person]'s actions or failure to act").  So under the general definition of criminal recklessness, the government would have to show that Crapsi knew that pointing a laser at an airplane endangered the safety of the plane and did it anyway.

The government counters with *United States v. Lucien*, 347 F.3d 45, 55-57 (2d Cir. 2003), in which the Second Circuit interpreted U.S.S.G. § 2B1.1(b)(16) (formerly U.S.S.G. § 2F1.1(b)(4)(A) (1997)).  That Guideline increases a defendant's base offense level in cases where "the offense involved . . . the conscious or reckless risk of death or serious bodily injury."  *Id.* § 2B1.1(b)(16).  The Second Circuit observed that "if an offense that involves a 'reckless risk' of injury requires an awareness of the risk, there is no meaningful distinction between a 'reckless risk' and a 'conscious risk' as the terms are used in the Guidelines."  *Lucien*, 347 F.3d at 56 (citing *United States v. Johansson,* 249 F.3d 848, 858 (9th Cir. 2001)).  Thus, the court held, an offense can involve the "reckless risk of death or serious bodily injury" under the Guidelines where the risk was "unknown to the defendant, [but was] the type of risk that is obvious to a reasonable person and for which disregard of said risk represents a gross deviation from what a reasonable person would do."  *Id.* at 56-57.  The government says the same standard should apply here.  Docket Item 77 at 2.

But as Crapsi observed at oral argument, the court in *Lucien* was focused on the specific wording of a different Guideline that used the phrase "conscious or reckless risk."  *See* U.S.S.G. § 2B1.1(b)(16).  Section 2A5.2(a) does not include the word "conscious."  *See id.* § 2A5.2(a).  Rather, it differentiates between "intentionally

4

endangering" and "recklessly endangering." *Compare id.* § 2A5.2(a)(1), *with id.* § 2A5.2(a)(2).

According to the government, "[t]he Sentencing Commission's decision to set different base offense levels for intentional and reckless endangerment shows that 'reckless' conduct for purposes of [U.S.S.G.] § 2A5.2(a)(2) does not require proof that a defendant knew of the risk that his conduct created." Docket Item 77 at 2. This Court disagrees. Pointing a laser at an aircraft with the specific intention of causing a plane crash "intentionally endanger[s] the safety of . . . [the] aircraft," resulting in the highest base offense level. *See* U.S.S.G. § 2A5.2(a)(1). Knowing that shining a laser at a plane might cause a crash but doing it anyway for another reason—perhaps just to see what it would look like—is different and less culpable, resulting in a lower offense level. *See id.* § 2A5.2(a)(2).

*Lucien* therefore does not convince the Court that it should depart from the standard definition of recklessness, which requires knowledge of the risk. But that does not end the inquiry. Some conduct is so obviously dangerous that the Court would not require the government to submit evidence of a defendant's specific knowledge of the danger. *Cf. Lucien*, 347 F.3d at 57 (finding it was "beyond cavil that [defendant's] conduct was reckless" where she "intended to participate in a staged, deliberate auto accident"). A person who fires a gun into a crowded room, for example, would be hard-pressed to convince this Court that she did not know it was dangerous. At oral argument, the government suggested that is the case here.

This Court is not persuaded. As the Ninth Circuit has explained, "laser beams do not operate like regular beams of light." *United States v. Rodriguez*, 790 F.3d 951, 960

5

(9th Cir. 2015).  Thus, "[t]hat one knows that the laser is dangerous when pointed directly in a person's eyes does not mean that one knows about the beam's ability to expand and refract, rendering it particularly hazardous for pilots in an aircraft miles away, or that the danger is heightened at nighttime because the pilot's eyes have adjusted to the dark."[2]  *United States v. Gardenhire*, 784 F.3d 1277, 1282 (9th Cir. 2015); *see id.* at 1283 (finding district court erred in concluding that defendant recklessly endangered aircraft when "the government introduced no evidence that supported a subjective awareness of the consequences of aiming a laser beam at an aircraft . . . "nor did it demonstrate that . . . the dangers of shining a laser at an aircraft were of general knowledge to the average person, or of specific knowledge to teens").  And that is so even if there is no dispute about whether the defendant was intentionally pointing a laser at an aircraft.  *See id.* at 1280 (defendant's "statement to the FBI that he intentionally tried to hit the aircraft with his laser beam" did "nothing to show that [he] was aware that if he hit the jet, as intended, he could blind or distract the pilot").

This Court agrees with the Ninth Circuit's reasoning.  Therefore, even if the government is correct that there may well be circumstances when proving subjective knowledge is unnecessary to trigger liability for acting recklessly, this is not that case.

---

[2] Indeed, as it noted at oral argument, this Court did not appreciate the danger of shining a laser at an aircraft until learning about it in this case.

**CONCLUSION**

In sum, for the reasons explained above, this Court finds that to establish that Crapsi "recklessly endanger[ed] the safety of . . . an aircraft" under U.S.S.G. § 2A5.2(a)(2), the government must prove by a preponderance of the evidence that he knew that pointing the laser at the aircraft would endanger its safety.  To do that, however, the government need not provide direct evidence of what is inside Crapsi's head; rather, it may use the sort of circumstantial evidence that it regularly uses to prove a defendant's state of mind.  The Court will set a schedule for further briefing and an evidentiary hearing at the upcoming status conference on April 21, 2026.


SO ORDERED.

Dated:   April 15, 2026
         Buffalo, New York


                                        /s/ Lawrence J. Vilardo
                                        LAWRENCE J. VILARDO
                                        UNITED STATES DISTRICT JUDGE

7